UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

CAMERON WILLIAMS,

                Plaintiff,

    -against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.
----------------------------------------X

NOT FOR PRINT OR ELECTRONIC PUBLICATION

**MEMORANDUM AND ORDER**

08-CV-4357 (KAM)

**MATSUMOTO, United States District Judge:**

Cameron Williams ("plaintiff") commenced this action against Michael J. Astrue, the Commissioner of Social Security ("defendant" or "Commissioner") on October 17, 2008, seeking review of defendant's decision that plaintiff's disability ceased as of February 1, 2002 and that plaintiff was therefore no longer entitled to disability insurance benefits under Title II of the Social Security Act ("the Act"). Plaintiff claims that his benefits were improperly terminated and that he is entitled to receive Social Security benefits due to severe medically determinable impairments, which he alleges prevent him from performing any work. The parties cross move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and 42 U.S.C. §§ 405(g) and 1383(c)(3).[1] For the

---

[1] 42 U.S.C. § 405(g) and 1383(c)(3) provide for judicial review in the district court of final decisions made by the Commissioner of Social Security.

reasons set forth below, this case is remanded to the Commissioner for further proceedings consistent with this opinion.

## I. BACKGROUND

Plaintiff was born on September 29, 1967. (Tr. 46.)[2] He is a high school graduate. (Tr. 81.) From 1986 to 1992 plaintiff worked as a tank constructor, assembling water tanks on rooftops. (*Id.*) Between 1992 and 1995 plaintiff worked as a truck driver's helper, assisting in the delivery of water tanks. (*Id.*)

Plaintiff filed an application for benefits under Title II of the Social Security Act on May 1, 1995. (Tr. 46-49.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 69.) On July 10, 1996, ALJ William Kirchgaessner found that the defendant suffered from grand mal epileptic seizures that had rendered plaintiff disabled within the meaning of the Act since March 21, 1995. (Tr. 34-40.) Based on this finding, ALJ Kirchgaessner awarded plaintiff disability insurance benefits under Section 223 of the Act. (Tr. 37-40.)

Thereafter, as required by law, the Social Security

---

[2] "Tr." Refers to the administrative record (Tr. 1-600).

2

Administration ("SSA") conducted periodic disability reviews. Based on one such review, by Notice dated February 4, 2002, the SSA informed plaintiff of its determination that plaintiff's disability ceased as of February 1, 2002 due to medical improvement related to his ability to work. (Tr. 129-134, 140.) Plaintiff then requested reconsideration of the cessation decision. (Tr. 171.) A hearing was held on July 9, 2002 before Hearing Officer Gregory Klosek. (Tr. 151-61.) On August 1, 2002, Hearing Officer Klosek concluded that plaintiff's condition had medically improved, that his disability ceased as of February 1, 2002, and that his period of disability terminated at the close of April 2002. (Tr. 129, 132-34, 203-213.)

On August 26, 2002, plaintiff requested a hearing before an ALJ. (Tr. 135.) That hearing was conducted before ALJ Harvey Feldmeier on February 28, 2005 and continued so that additional medical information could be considered on July 5, 2005 and November 7, 2005. (Tr. 547-69, 570-85, 586-601.) On January 23, 2006, ALJ Feldmeier found that plaintiff's seizure disorder did not meet the severity of an impairment listed in Appendix 1 of the Act under either listing 11.02, which relates to grand mal seizures, or 11.03, which relates to petit mal

seizures.[3] (Tr. 25-32.) Further, ALJ Feldmeier concluded that there was medical improvement of plaintiff's condition and that said improvement was related to plaintiff's ability to work. (*Id*.) ALJ Feldmeier based this conclusion on evidence that plaintiff suffered only approximately one "seizure" per year, without specifying any particular type of seizure. (*Id*.) ALJ Feldmeier next found that the plaintiff's impairment was severe, but that plaintiff could perform his past relevant work as a truck driver's helper. (*Id*.) ALJ Feldmeier based this conclusion on a medical assessment form dated November 14, 2005, in which Dr. Betty Mintz, plaintiff's treating physician ("Dr. Mintz"), found that the plaintiff had no limitation lifting, carrying, standing, walking, or sitting. (*Id*.)

Plaintiff subsequently obtained counsel and requested review of the ALJ's decision on March 15, 2006. (Tr. 23.) The Appeals Council denied plaintiff's request on November 6, 2006. (Tr. 19-22.) On April 11, 2007 the Appeals Council set aside the November 6, 2006 denial in order to consider new evidence. (Tr. 17.) On September 5, 2008, after receiving additional submissions and evidence, the Appeals Council again denied the

---

[3] *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, section 11.00. Subsection 11.02 lists grand mal epileptic seizures as a potential disability, and subsection 11.03 lists petit mal seizures as a potential disability. *See id*.

4

plaintiff's request for review, making the ALJ's decision of January 23, 2006 the final decision of the Commissioner. (Tr. 9-14.)

This appeal followed. On October 17, 2008 plaintiff filed a complaint against the Commissioner seeking review of the ALJ's decision by the District Court and alleging that the decision of the ALJ was erroneous, unsupported by substantial evidence on the record, and/or contrary to law. (Doc. No. 1, Complaint ("Compl.") at ¶ 9.) The parties cross-moved for judgment on the pleadings. (See Doc. No. 12, Defendant's Motion for Judgment on the Pleadings ("Def. Mem."); Doc. No. 21, Plaintiff's Cross-Motion for Judgment on the Pleadings ("Pl. Mem."); Doc. No. 22, Memorandum of Law in Opposition to Plaintiff's Cross-Motion for Judgment on the Pleadings and in Further Support of the Defendant's Motion for Judgment on the Pleadings ("Def. Reply"); Doc. No 26, Plaintiff's Reply Memorandum of Law ("Pl. Reply").) Plaintiff seeks reversal of the Commissioner's decision and reinstatement of his Social Security Disability benefits. (Pl. Mem. at 22.) Defendant requests that the court affirm the Commissioner's decision and dismiss the action. (Def. Mem. at 19.)

## II. DISCUSSION

*A. Standard of Review*

Once a claimant has established that his or her condition is disabling under the Social Security Act, the claimant is entitled to a presumption that the condition remains disabling. *De Leon v. Secretary of HHS,* 734 F.2d 930, 936 (2d Cir. 1984). However, the Secretary may terminate the payment of disability benefits if it is determined that plaintiff's disability has ceased. 42 U.S.C. § 425(a); *see, e.g., De* Leon, 734 F.2d 930, 936. More specifically, under the medical improvement standard adopted by the Second Circuit, "the Secretary may terminate benefits to a person previously adjudged to be disabled only upon substantial evidence that the individual's condition has improved to the point that he or she is no longer disabled, or that the initial finding of disability was erroneous." *De Leon,* 734 F.2d at 936.

In reviewing cases where disability benefits have been terminated, it is not the function of the court to determine *de novo* whether the claimant is disabled. *Irvin v. Heckler*, 592 F. Supp. 531, 536 (S.D.N.Y. 1984). Assuming the Secretary has applied proper legal principles, judicial review is limited to an assessment of whether the finding that medical improvement exists is supported by substantial evidence. *Id*. Thus, absent

legal error by the Secretary, a decision to terminate benefits cannot be set aside if it is supported by substantial evidence. *See Dumas v. Schweiker,* 712 F.2d 1545, 1550 (2d Cir. 1983) (affirming termination of benefits where the medical record substantially supported the Secretary's finding of medical improvement); *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir. 1979) (same). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).

In general, the district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, where the administrative record is incomplete in a termination of benefits case, remand is appropriate for further development of the evidence. *Rosa v. Callahan,* 168 F.3d 72, 82-83 (2d Cir. 1999) (outlining general remand standard in social security cases); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2003) (remanding in termination of benefits case for supplementation of the record where there was no adequate basis on which to conclude whether Commissioner's finding was supported by

substantial evidence); *Chavis v. Astrue*, No. 5:07-CV-0018, 2010 WL 624039 (N.D.N.Y February 18, 2010) (remanding in a termination of benefits case for failure to consider medical evidence); *Wright v. Comm'r of Soc. Sec.*, No. 3:06-CV-394, 2008 WL 4287387 (N.D.N.Y. Sept. 16, 2008) (remanding in a termination of benefits case for failure to meet substantial evidence standard or consult a vocational expert); *Batista v. Barnhart*, 326 F. Supp. 2d. 345 (E.D.N.Y. June 18, 2004) (remanding in a termination of benefits case where ALJ failed to develop the administrative record).

    *B. Application*

  1. *Contradictory and Incomplete Evidence in the Record Regarding the Existence of Plaintiff's Petit Mal Seizures*

      Here, the record contains considerable evidence that plaintiff experienced two different types of seizures of differing severity and frequency: (i) grand mal seizures[4] and (ii) petit mal seizures.[5] However, the record is incomplete and

---

[4]     A grand mal seizure is a seizure involving the entire body. United States National Library of Medicine Encyclopedia, *available at* http://www.nlm.nih.gov/medlineplus/ency/article/000695.htm. Such seizures usually involve muscle rigidity, violent muscle contractions, and loss of consciousness. *Id*. Grand mal seizures may occur in people of any age, as a single episode or as part of a repeated, chronic condition (epilepsy). *Id*.

[5]     A petit mal seizure is the term usually given to a staring spell. United States National Library of Medicine Encyclopedia, *available at* http://www.nlm.nih.gov/medlineplus/ency/article/000696.htm. It is a brief (usually less than 15 seconds) disturbance of brain function due to abnormal electrical activity in the brain. *Id*. Petit mal seizures can occur alone but can also happen along with other types of seizures such as grand mal seizures, twitches or jerks, or sudden loss of muscle strength. *Id*.

ambiguous with regard to the frequency and severity of plaintiff's petit mal seizures. (Tr. 185.) For example, Dr. John Lupiano, another of plaintiff's treating physicians, reported on February 6, 2002, that while plaintiff's grand mal seizures had decreased in frequency to about one per year, plaintiff had experienced an increased number of petit mal and focal seizures without specifying the frequency of such seizures. (*Id.*)

Plaintiff's testimony also indicates that in addition to the grand mal seizures plaintiff experienced periodically, he also experienced petit mal seizures. Plaintiff described his petit mal seizures in detail during the hearings before the ALJ. First during the February 28, 2005 hearing plaintiff described his petit mal seizures and stated that he could prevent them from developing into grand mal seizures by lying down and relaxing. (Tr. 560.) The ALJ inquired as to the frequency of the petit mal seizures and plaintiff responded that he had experienced such seizures twice in the week prior to the hearing, about four in all of February 2005, and three or four in January 2005. (Tr. 561-562.) Plaintiff testified that these episodes involved shaking and dropping whatever was in his hands. (Tr. 563.)

At the supplemental hearing on July 5, 2005, plaintiff

further testified that since the February 28 hearing he had had approximately 12 "seizures." (Tr. 576.) Plaintiff further testified that he had had approximately three "seizures" in May 2005 and four to six in June 2005. (Tr. 578, 580.) In neither case did the plaintiff specify whether these were petit mal seizures, grand mal seizures, or both.

Additionally, during the supplemental hearing in July 2005, the ALJ may have also witnessed the plaintiff experiencing a petit mal seizure. The ALJ stated that he noticed that plaintiff paused twice during his testimony and that he saw plaintiff's eyes roll back in his head. (Tr. 579.) The ALJ was unsure whether the episodes were linked to the plaintiff's seizure disorder, but he stated "if you're getting these things on a regular basis, it's going to be kind of hard to hold down [a job] I would think. I just want to see what the doctors say about it . . . I've seen some kind of interruption in your testimony a couple of times, two times now." (Tr. 581.) Moreover, after witnessing the foregoing, the ALJ further commented that "you do have a definite problem here. I am convinced of that. If we can learn more about the frequency . . . ." (Tr. 584.)

Yet despite this evidence that plaintiff experienced petit mal seizures in addition to grand mal seizures,

10

plaintiff's own testimony about the occurrence of his petit mal seizures was contradictory and inconsistent. Plaintiff first testified that he had had about three unspecified seizures in May 2005 and four to six unspecified seizures in June 2005, a rate of more than once per week, which may constitute a disability under the Act.[6] (Tr. 562-563, 576, 578.) Yet, at the July 2005 hearing plaintiff agreed with Dr. Mintz's assessment that he had been seizure-free for a "long time." (Tr. 578-80.) Further, at the November 2005 hearing plaintiff testified that he had a seizure on August 11, 2005, but that his last previous seizure occurred on September 13, 2004 and that he was only experiencing seizures once or twice per year. (Tr. 593.) Plaintiff did not specify which type of "seizures" he experienced once or twice per year. However, plaintiff then went on to describe what he called "controllable seizures" which he dealt with by lying down and relaxing. (Tr. 595.) It thus appears that when reporting and calculating the frequency of his seizures, plaintiff sometimes included and sometimes left out his petit mal seizures.

Thus, while contradictory and incomplete, the record

---

[6] *See* C.F.R. Part 404, Subpart P, Appendix 1, subsection 11.03. Subsection 11.02 lists grand mal epileptic seizures occurring more frequently than once per month as a potential disability, and subsection 11.03 lists petit mal occurring more frequently than once per week as a potential disability. *Id.*

11

contains evidence that plaintiff experienced not only grand mal seizures, but also petit mal seizures. Further factual development is required to reconcile the identified inconsistencies and contradictions.

2. *The ALJ Failed to Develop the Record Regarding Plaintiff's Petit Mal Seizures*

      Although the ALJ specifically noted the need for further factual development regarding the frequency of plaintiff's petit mal seizures during the July 2005 hearing (Tr. 581), the ALJ nonetheless failed to develop the record with regard to plaintiff's petit mal seizures by seeking input from plaintiff's treating physicians, Dr. Lupiano or Dr. Mintz, regarding the frequency and severity of plaintiff's petit mal seizures and whether those seizures met the criteria of an impairment under the Act and were capable of causing a limitation in plaintiff's residual capacity to perform work.

      Specifically, and presumably in response to the identified inconsistencies in the record, at the July 2005 hearing the ALJ gave plaintiff a subpoena for his medical records and directed plaintiff to give the subpoena to his doctors and ask them to provide his medical records. (*Id.*) In spite of this specific request by the ALJ for further clarification about the frequency of plaintiff's petit mal

seizures, the record of the November 2005 hearing inexplicably did not include any further clarification about this issue. Yet plaintiff again discussed what he referred to as "controllable" seizures with the ALJ during the November 2005 hearing. (Tr. 595.) In response, the ALJ suggested to plaintiff that he go to a doctor to treat and document these "controllable" seizures. (*Id*.) Thus, despite evidence that plaintiff experienced not only grand mal seizures, but also petit mal seizures, the record contains no clarification by the plaintiff himself, his treating physicians, or any other medical professional, regarding the frequency or severity of the petit mal seizures documented by the record.

While the court reaches no conclusion regarding those questions, the record evidence regarding plaintiff's petit mal seizures should have – and did - prompt the ALJ to pursue additional information in order to sufficiently develop the record, but the ALJ inexplicably failed to follow up on his own request for further information. *See Nieves v. Barnhart*, No. 02 Civ. 9207, 2004 WL 2569488, at *8 (S.D.N.Y. Nov. 12, 2004) (failure to obtain plaintiff's medical records was a "violation of ALJ's affirmative duty to assist a claimant") (*quoting Echevarria v. Sec'y of Health and Human Services*, 685 F.2d 771, 755 (2d Cir. 1982)).

*3. The ALJ Failed to Consider Plaintiff's Petit Mal Seizures*

Despite the evidence – albeit incomplete and apparently contradictory - in the record regarding plaintiff's petit mal seizures, the ALJ's decision indicates a failure to take the petit mal seizures into account.  In his decision, the ALJ repeatedly referred to plaintiff's "seizures" without clarifying whether he was referring to plaintiff's petit mal or grand mal seizures.  Specifically, after reviewing the evidence concerning plaintiff's seizure disorder, the ALJ concluded that (1) plaintiff did not have an impairment as defined by Appendix 1 of the Act; (2) medical improvement occurred in plaintiff's seizure disorder and this improvement was related to plaintiff's ability to work; and (3) plaintiff could perform his past work as a truck-driver's helper.  (Tr. 28-32.)  In particular, the ALJ concluded that while plaintiff "may not be completely free of symptoms, there is no objective medical reason to support the fact that he is precluded from engaging in 'heavy' work, or work consisting of lifting/carrying 50 pounds frequently, and standing/walking for 6 hours in an 8-hour day."  (Tr. 30.)  However, the ALJ did not address whether plaintiff's need to cease activity and lie down to prevent a petit mal seizure from progressing to a grand mal seizure had any bearing on his determination that plaintiff was no longer disabled and could

14

perform this kind of work.

      The ambiguously worded decision leaves open the question of whether the ALJ took into account both types of seizures in reaching his conclusions. Moreover, despite the ALJ's awareness of the petit mal seizures, as evidenced by the hearing transcript, the ALJ's opinion actually suggests that the ALJ may not have considered plaintiff's petit mal seizures. Dr. Lupiano's notes, dated January 31, 2002, indicate that plaintiff's grand mal seizures had reduced in frequency to approximately one per year. (Tr. 185.) However, the record also indicates that the frequency of plaintiff's petit mal seizures had increased, possibly to as often as once or more per week. (Tr. 185, 562-63, 576, 578.) Yet, the ALJ twice concluded that the plaintiff had "seizures" only about once per year. (Tr. 29, 30.) The ALJ did not specify whether these "seizures" were grand mal seizures, petit mal seizures, or both, but the seizure rate of one per year indicates that the ALJ considered only the grand mal seizures and overlooked plaintiff's petit mal seizures. Additionally, while the ALJ's decision says that both subsections 11.02 (concerning grand mal seizures) and 11.03 (concerning petit mal seizures) of Appendix 1 of the Act were considered in his decision[7] (Tr. 29), the same

---

[7]    *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, section 11.00.

15

sentence describes the plaintiff as experiencing only about one seizure per year. (*Id.*) Based on the available record, it appears that this calculation only took into account plaintiff's grand mal seizures, suggesting that the ALJ did not consider plaintiff's petit mal seizures at all.

*4. Remand is Appropriate*

The court rejects defendant's contention that reversal of the termination of plaintiff's benefits is not warranted because the ALJ fully considered plaintiff's petit mal seizures and there are no gaps in the administrative record. (Def. Mem. at 1, 3.) As detailed at length above, the record is incomplete with regard to the frequency and severity of plaintiff's petit mal seizures and how they might affect plaintiff's ability to resume his former employment. Plaintiff argues that the proper remedy is to reverse the February 1, 2002 termination of benefits and reinstate plaintiff's benefits. (Pl. Mem. at 20.)

The remedy sought by plaintiff – reversal of the termination – is only appropriate if "the ALJ reached a mistaken conclusion on an otherwise complete record." *Nieves*, 2004 WL 2569488, at *8 (quoting *Rosa*, 168 F.3d 72, 83). The record here, however, is incomplete, contradictory, and ambiguous. There is nothing on the record to clarify the frequency of plaintiff's petit mal seizures. The medical records with regard

to petit mal seizures refer only to an increase in the frequency of such seizures without specifying how often they occurred. (Tr. 185.) As discussed above, plaintiff's own testimony on the subject is contradictory.

Where, as here, the record is incomplete, courts in this circuit have not hesitated to remand termination cases for further development of the record. *See, e.g., Veino*, 312 F.3d at 588 (remanding in termination of benefits case for supplementation of the record where there was no adequate basis on which to conclude whether the Commissioner's finding was supported by substantial evidence because the record did not include the medical evidence as to plaintiff's condition when plaintiff was granted benefits); *Chavis*, 2010 WL 624039 (remanding in termination of benefits case for failure to consider medical evidence); *Wright*, 2008 WL 4287387 (remanding in termination of benefits case for failure to meet substantial evidence standard or consult a vocational expert); *Batista*, 326 F. Supp. 2d. 345 (remanding termination of benefits case where ALJ failed to develop the administrative record); *Nieves*, 2004 WL 2569488, at *8 (remanding where ALJ failed to obtain plaintiff's psychiatric records).

In this case, the gaps in the record resulting from the ALJ's failure to clarify the frequency and severity of

plaintiff's petit mal seizures can only be remedied by remanding for clarification and supplementation of the record. The evidence as it now stands would not appear to require a finding that the ALJ's conclusion was mistaken, given plaintiff's inconsistent testimony. If, as plaintiff testified at the November 2005 hearing, plaintiff only experiences one or two seizures per year (Tr. 593), the ALJ's termination of benefits is supported by substantial evidence. If, however, as plaintiff testified at the same hearing, plaintiff suffers more frequent petit mal seizures (*id*.), the ALJ's decision may not be supported by substantial evidence.

The ALJ's failure to clarify plaintiff's contradictory testimony leaves the record regarding the frequency and severity of plaintiff's petit mal seizures ambiguous. The termination determination may, or may not, have appropriately overcome the presumption of disability, a review which cannot be achieved on this incomplete record. In the face of this uncertainty, reversal of the termination is not appropriate. Accordingly, the case is remanded to allow the ALJ to further develop the record. *See, e.g., Veino*, 312 F.3d at 588 (remanding in termination of benefits case where an incomplete record did not yield an adequate basis on which to conclude whether the Commissioner's finding was supported by substantial evidence).

### III. CONCLUSION

For the reasons set forth above, this case is remanded to the Commissioner for further proceedings consistent with this opinion. On remand, the ALJ should: (i) further develop the factual record by requesting information from plaintiff and his treating doctors regarding the frequency and severity of plaintiff's petit mal seizures, and (ii) explicitly explain how the frequency and severity of plaintiff's petit mal seizures do or do not support a finding of medical improvement and ability to engage in his previous occupation and his continued entitlement to Social Security Disability benefits. The Clerk of the Court is respectfully requested to close this case.

**SO ORDERED.**

Dated: July 20, 2010
       Brooklyn, New York

                                                            _____ /s/_____
                                                             **Kiyo A. Matsumoto**
                                                             United States District Judge